**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Sherry Sturgis, | ) | No. CV 18-599-TUC-LAB |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 13)

The ALJ in this case failed to give specific and legitimate reasons for discounting the opinion of the treating physician. The case is remanded for further proceedings.

PROCEDURAL HISTORY

In November of 2014, Fitzgerald filed applications for disability insurance benefits pursuant to Title II of the Social Security Act. (Tr. 10) She alleged disability beginning on February 1, 2013, due to "left thumb injury, fibromyalgia, dystrophy to left foot, arthritis in fingers, anxiety, hematoma in glut[e]." (Tr. 230)

Her application was denied initially and upon reconsideration. (Tr. 103-107); (Tr. 113-117). Sturgis requested review and appeared with counsel at a hearing before Administrative

Law Judge (ALJ) Randolph Schum on November 6, 2017. (Tr. 34) In his decision, dated April 2, 2018, the ALJ found Sturgis was not disabled because she can still work as a patient representative and office manager. (Tr. 10-20) Sturgis requested review, but on October 31, 2018, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-3) Sturgis subsequently filed this action appealing that final decision. (Doc. 1)

Claimant's Work History and Medical History

Sturgis was born in May of 1953. (Tr. 200) She was 64 years old when ALJ issued his decision in September of 2017. (Tr. 48) She was 59 years old on her alleged onset date. (Tr. 230) She finished 11th grade in high school but did not graduate. (Tr. 35)

In February of 2013, Sturgis was employed selling jewelry to tourists at a cruise ship pier. (Tr. 37) She was driving a moped to work when she was struck by a Toyota Tundra making a left turn into a driveway. (Tr. 37) Five and one-half months later, her doctors released her to "light duty" work, but there was no such work available from her employer. (Tr. 38)

*Mental Impairment*

In June of 2015, Hillary Weiss, Ph.D., reviewed the medical record for the disability determination service and offered an opinion of Sturgis's mental impairment. (Tr. 68) Weiss considered the listings for an anxiety-related disorder. (Tr. 67) She then evaluated Sturgis's "B" listing criteria, which gauge the severity of her limitations. *See* 20 C.F.R. § 404.1520a(c)(3). Weiss found Sturgis has "mild" difficulties in maintaining concentration, persistence, or pace and no evidence of decompensation. (Tr. 67) Weiss further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of Sturgis's mental impairment. (Tr. 67) Weiss concluded that Sturgis's mental impairment is non-severe. (Tr. 67)

In January of 2016, Kim Morris, Psy.D., reviewed the medical record for the disability determination service and offered an opinion of Sturgis's mental impairment. (Tr. 88) Morris considered the listings for an affective disorder and an anxiety-related disorder. (Tr. 87) She evaluated Sturgis's "B" listing criteria. *See* 20 C.F.R. §§ 404.1520a(c)(3). Morris found Sturgis has "mild" restrictions of activities of daily living; "mild" difficulties in maintaining social functioning; "mild" difficulties in maintaining concentration, persistence, or pace; and no evidence of decompensation. (Tr. 87-88) Morris further opined that the medical evidence did not establish the presence of the "C" criteria. (Tr. 88) Morris concluded that Sturgis's mental impairment is non-severe. (Tr. 87)

*Physical Impairment*

In June of 2015, Alicia V. Blando, M.D., reviewed the medical records for the disability determination services. (Tr. 72) Blando opined that Sturgis can lift or carry 20 pounds occasionally and 10 pounds frequently. (Tr. 69) She can stand, walk, or sit for 6 hours in an 8-hour work day. (Tr. 69) She should only occasionally climb ramps, stairs, ladders, ropes, or scaffolds. (Tr. 69-70) She is limited in handling and fingering with her right hand. (Tr. 70) She should avoid concentrated exposure to extreme cold due to her fibromyalgia. (Tr. 70-71)

In January of 2016, E. Christian, M.D., reviewed the medical records for the disability determination services. (Tr. 93) Christian opined that Sturgis can lift or carry 20 pounds occasionally and 10 pounds frequently. (Tr. 90) She can stand or walk for about 6 hours in an 8-hour work day. (Tr. 90) She should only occasionally climb ramps, stairs, ladders, ropes, or scaffolds. (Tr. 90) Her ability to handle and finger is limited on her right hand. (Tr. 90) She should avoid concentrated exposure to extreme cold, fumes, odors, gusts, gases, poor ventilation and hazards. (Tr. 91)

On November 19, 2014, Steven Santoyo, M.D., Sturgis's treating physician, provided a medical opinion of Sturgis's physical impairments. (Tr. 435-444) He diagnosed fibromyalgia, reflex sympathetic dystrophy of left foot/leg, anxiety, teporomandibular joint pain, right thumb pain/weakness, and LBP (low back pain). (Tr. 435) He opined that Sturgis

can walk one block without rest. (Tr. 436) She can sit for about 2 hours and stand/walk for less then 2 hours in an 8-hour day. (Tr. 437) She can lift less than 10 pounds occasionally. (Tr. 437) She should never climb ladders and only rarely crouch or squat. (Tr. 437) She can use her right hand and fingers only 5% of the time during an 8-hour work day. (Tr. 438) She would likely miss more than four days of work per month to her medical impairments. (Tr. 438)

*Hearing*

At the hearing, Sturgis testified that she cannot work because her fibromyalgia causes her pain when she sits and when she stands. (Tr. 41) She must lie down for 20 minutes after sitting or standing for 30 minutes. (Tr. 42) She has arthritis in her hands and a right thumb injury from the traffic accident that was never resolved. (Tr. 43) Her pain affects her ability to concentrate. (Tr. 44) She has anxiety and panic attacks. (Tr. 44-45) She cannot lift a gallon of milk, which weighs 8 pounds. (Tr. 46)

Susan Moranda testified as a vocational expert. (Tr. 48) Moranda testified that a person aged 59 who could occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand or walk for 2 hours or sit for 6 hours in a normal 8-hour day; could occasionally climb stairs and ramps; can never climb ropes, ladders, and scaffolds; could occasionally stoop, crouch, kneel, and crawl, whose overhead reaching is limited to frequently bilaterally and handling and feeling is limited to frequently on the right, which is the dominant hand, and who should avoid concentrated exposure to extreme cold, fumes, odors, dusts, and gases, unprotected heights, and moving and dangerous machinery, could work in Sturgis's previous job as an office manager, DOT 186.117-034, or patient representative, DOT 205.362-018. (Tr. 48-50)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20

C.F.R. § 404.1520(a)(4). If so, then the claimant is not disabled and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. § 404.1520(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Sturgis "has not engaged in substantial gainful activity since February 1, 2013, the alleged onset date. . . ." (Tr. 12) At step

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

two, he found Sturgis "has the following severe impairments: residuals of right foot injury; mild degenerative changes of the right hand; osteopenia; non specific myositis/myalgia/osteoarthritis; lumbago; degenerative changes of the cervical spine; and asthma. . . ." (Tr. 12)

At step three, the ALJ found Sturgis's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 14)

The ALJ then analyzed Sturgis's residual functional capacity (RFC). He found that "the claimant has the residual functional capacity to perform sedentary work . . . . She can lift and carry ten pounds occasionally and less than ten pounds frequently. She can stand/walk for up to two hours and sit for at least six hours in an eight-hour workday. She should never climb ropes, ladders or scaffolds but can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She may reach overhead frequently. Handling and feeling on the right is limited to frequently. She should avoid concentrated exposure to extreme cold, fumes, odors, dust, gases, unprotected heights, and moving and dangerous machinery." (Tr. 15)

At step four, the ALJ found Sturgis is able to perform her past relevant work as a patient representative, DOT 205.362-018, and office manager, DOT 186.117-034. (Tr. 20)

STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. § 405(g). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is "more than a mere scintilla but less than a preponderance." *Id*.

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id*.

The Commissioner need not accept the claimant's subjective testimony of disability, but if he decides to reject it, he must justify his decision. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). "[W]ithout affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.

Discussion: Treating Physician

The ALJ committed legal error when he improperly discounted the opinion of Sturgis's treating physician, Steven Santoyo. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The court does not reach Sturgis's remaining claims of error.

"Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are [ordinarily] given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). If the treating physician's opinions are uncontradicted, the ALJ may disregard them only after giving clear and convincing reasons for doing so. *Id*. The ALJ may reject the treating physician's contradicted opinion only if he sets forth "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified).

In this case, Santoyo's opinion of disability is contradicted by the medical opinions of the non-examining state agency physicians, Alicia V. Blando and E. Christian. (Tr. 69); (Tr. 90) Accordingly, the ALJ's decision to discount Santoyo's opinion must be supported by "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (punctuation modified); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (applying the "specific and legitimate" test). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "The ALJ must do more than offer his conclusions." *Id*. "He must set forth his own interpretations and explain why they, rather than the doctor['s], are correct." *Id*.

If the treating source's opinion "is well-supported by medically and acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). If the treating source's opinion is not given controlling weight, the ALJ must nevertheless analyze other factors such as the length, nature, and extent of the treating relationship; the supportability and consistency of the opinion; and the degree of medical specialization possessed by the treating source. 20 C.F.R. § 1527(c); *see also Sameena, Inc. v. U. S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("[A] federal agency is obliged to abide by the regulations it promulgates."). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996) In sum, the ALJ must "give good reasons" for the weight given to the treating source's opinion. 20 C.F.R. § 404.1527(c)(2).

In this case, Sturgis's treating physician Santoyo provided a medical opinion of her physical impairments. He diagnosed fibromyalgia, reflex sympathetic dystrophy of left foot/leg, anxiety, teporomandibular joint pain, right thumb pain/weakness, and LBP (low back pain). (Tr. 435) He opined that Sturgis can walk one block without rest. (Tr. 436) She can sit for about 2 hours and stand/walk for less then 2 hours in an 8-hour day. (Tr. 437) She can lift less than 10 pounds occasionally. (Tr. 437) She can never climb ladders and only rarely crouch or

squat. (Tr. 437) She can use her right hand and fingers only 5% of the time during an 8-hour work day. (Tr. 438) She would likely miss more than four days of work per month due to her medical symptoms. (Tr. 438)

The ALJ rejected Santoyo opinions, giving them "[n]o weight," and found that Sturgis has the physical ability to perform sedentary work with certain restrictions. (Tr. 15) The ALJ's stated reasons for doing so are not "specific and legitimate." *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified).

The ALJ's decision reads in pertinent part as follows:

> No weight is given to the residual functional capacity of Dr. Santoyo at Exhibit 7F. He misrepresented when he started treating the claimant (indicating February 2013) when the records clearly show the first visit was September 16, 2014. His opinion was based on only two or three visits without any examination support for a diagnosis of fibromyalgia. They were also based in part on alleged mental impairments for which the doctor is unqualified. Dr. Villareal in his office diagnosed myalgia/myositis, not fibromyalgia. A rheumatologist in Exhibit 28F did not find fibromyalgia but instead osteoarthritis. Another rheumatologist in Exhibit 40F stated, based on one examination, that fibromyalgia was a potential diagnosis among several.

(Tr. 19) The ALJ's lists a number of reasons why he gives the opinion no weight. The court examines those reasons seriatim.

First, the ALJ states that Santoyo "misrepresented when he started treating the claimant (indicating February 2013) when the records clearly show the first visit was September 16, 2014." (Tr. 19) Apparently, the ALJ believes Santoyo is intentionally misrepresenting the length of his treating relationship with Sturgis in order to bolster his opinion. In fact, the record shows, at most, an ambiguity in the form itself. The questionnaire, which Santoyo filled out, poses the following compound question at No. 1: "Date treatment began _____ Frequency of treatment _____ ." (Tr. 435) In the first blank, Santoyo wrote "2/22/13." In the second blank he wrote "Monthly." *Id*. The ALJ assumes that the first question asks when treatment *with Santoyo* began, and accuses Santoyo of a misrepresentation because Sturgis did not begin treatment with him until September 16, 2014. It seems obvious, however, that Santoyo wrote "2/22/13" in the blank because that is the date of the traffic accident. That is the date when Sturgis began treatment for the injuries that resulted in her chronic pain. It seems

- 9 -

unlikely in the extreme that Santoyo would intentionally falsify his answers to this questionnaire and do so in a manner that would be so obvious. In February of 2013, when the accident occurred, Sturgis was still living in Hawaii. Sturgis did not move to San Diego, where Santoyo practices, until 2014. *See* (Tr. 448) ("Moved here recently from Hawaii.")

The ALJ next complains that Santoyo's "opinion was based on only two or three visits without any examination support for a diagnosis of fibromyalgia." (Tr. 19) The ALJ is certainly correct to note that the number of times that a physician treats a patient is relevant when evaluating the reliability of that physician's medical opinion. Here, the ALJ observes that Santoyo only saw Sturgis "two or three" times before he completed the questionnaire. Certainly, one would have more confidence in Santoyo's opinion if he treated Sturgis dozens of times. But the limited number of visits here, "two or three," seems hardly to justify giving the opinion "no weight." (Tr. 19) Indeed, the ALJ gave the opinion of the medical consultant, Alicia Blando, "little weight," more than he gave Santoyo's, even though Blando never saw Sturgis at all. (Tr. 19)

The ALJ further notes that Santoyo diagnosed fibromyalgia without conducting an examination. The ALJ, however, overlooks the fact that Santoyo had access to Sturgis's medical records in which there is a record of her previous diagnosis for fibromyalgia and a record of her prior prescriptions for lorazepam, which she takes to treat this disease. (Tr. 463)

The ALJ states that Santoyo's opinions "were also based in part on alleged mental impairments for which the doctor is unqualified." (Tr. 19) He does not explain, however, why he thinks Santoyo is "unqualified" to evaluate the physical limitations caused or exacerbated by mental illness. Santoyo is a "family practice" physician and therefore lacks the expertise of a mental health specialist. (Tr. 44) Nevertheless, it is a stretch to say that a "family practice" physician is "unqualified" to recognize and treat mental health symptoms.

The ALJ notes that "Dr. Villareal in his office diagnosed myalgia/myositis, not fibromyalgia." (Tr. 19) But as Sturgis points out, "myalgia/myositis" is simply a different billing code for the condition now usually referred to as "fibromyalgia." (Doc. 18, p. 8) Accordingly, there is no actual difference in their diagnoses.

1    The ALJ states that "[a] rheumatologist in Exhibit 28F did not find fibromyalgia but
2    instead osteoarthritis." Tr. 19) This is a bit misleading. On page 1 of Exhibit 28F, there is a
3    notation of "Osteoarthritis" under the heading "Followup" and under the heading "Problems."
4    (Tr. 873) But on page 2 of the same exhibit there is a notion that Sturgis has a medical history
5    of Anxiety/Depression, Asthma, and Fibromyalgia. (Tr. 874) The notation "fibromyalgia" also
6    appears on page 3 under "Assessment." It appears, therefore, that the notation "osteoarthritis,"
7    where it appears by itself, was intended to describe the particular treatment that Sturgis was
8    seeking on that day and not a complete description of her medical impairments.

9    The ALJ also states that "[a]nother rheumatologist in Exhibit 40F stated, based on one
10   examination, that fibromyalgia was a potential diagnosis among several." One might infer from
11   the ALJ's statement that this rheumatologist believed that Fibromyalgia was a possible
12   diagnosis for Sturgis's pain but that another diagnosis might also explain her symptoms. And
13   therefore, Santoyo's diagnosis of fibromyalgia might be wrong. In fact, the physician's
14   statement does not say that. The rheumatologist, Akther Kotha, M.D., stated (in a somewhat
15   confusing manner) that "[t]he patient has most likely her hands tender, proximal interphalangeal
16   joints mostly [sic] likely inflammatory Osteoarthritis, DJD [degenerative joint disease] of the
17   neck and fibromyalgia, but six different medications did not help." (Tr. 1019) Kotha believes
18   that Sturgis has osteoarthritis in her hands, degenerative joint disease of the neck *and
19   fibromyalgia*. Sturgis has different diagnoses that explain pain in different parts of her body,
20   but those different diagnoses are in addition to, not in place of, her fibromyalgia. The
21   rheumatologist's diagnoses of osteoarthritis and degenerative joint disease do not make
22   Santoyo's diagnosis of fibromyalgia less likely or his impression of her physical limitations less
23   reliable. The ALJ did not provide specific and legitimate reasons for discounting the opinion
24   of Sturgis's treating physician.

25   The Commissioner argues that there are other reasons why Santoyo's opinion should be
26   discounted. Sturgis's July 2013 examination was unremarkable, for instance. (Doc. 19, p. 11)
27   And "Santoyo's opinions were inconsistent with Plaintiff's daily activities." *Id*. This court,
28   however, may only consider "the reasons provided by the ALJ in the disability determination

and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)

Sturgis argues that the ALJ's errors "require remand for reconsideration of the evidence in its proper context." (Doc. 18, p. 18); see also *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ("When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). She does not argue that this case must be remanded for payment of benefits. Accordingly,

IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for further proceedings.

The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 13th day of September, 2019.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge